[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
In his petition for a Writ of Habeas Corpus originally filed on June 1, 2001 and amended on April 22, 2002, the petitioner, Ruperto Vicente, Jr., having been convicted of Manslaughter in the 1st degree, alleges that he was denied the effective assistance of counsel at both the trial and appellate levels in violation of the Sixth andFourteenth Amendments to the United States Constitution and Article I, § 8 of the Constitution of the State of Connecticut. For the reasons set forth more fully below, the petition shall be denied.
The claim of ineffective assistance of counsel contained within the amended petition alleges multiple ways in which the petitioner's trial defense counsel and appellate counsel were deficient. Notwithstanding these claims, the proof put forth at the petitioner's habeas trial focused almost exclusively upon the specific complaint that neither his trial nor appellate counsel was effective in dealing with his claim of involuntariness in providing a statement to the police. Consequently, since this is the primary ground upon which the petitioner went forward before this Court, that is the issue with which this Court will concern itself in resolving the petition for a writ of habeas corpus. There is an ancillary issue that involves the fear that the petitioner may have felt as a result of his interactions with members of the Latin Kings street gang. While there are intimations that this fear could have arisen to the level of a claim of self-defense and that the trial defense counsel was ineffective in not pursuing that claim, for reasons that will be discussed in greater detail, that claim is rejected.
This matter came on for trial before this Court on October 30th, 2002. The petitioner, the petitioner's trial defense counsel, the Hon. Sheridan Moore[1], his appellate counsel, Attorney John E. Doran, and the girl friend of the petitioner's father, Luz Camacho, testified at the trial. In addition, the Court received copies of two reported cases into evidence, marked as Exhibits 1 and 2. The Preliminary Statement of Issues CT Page 13808 in the Petitioner's Appeal was marked as Exhibit 3, the Petitioner's redacted statement to the Waterbury police was admitted as Exhibit 4. Various parts of the trial transcript were marked as Exhibits 5, 6, and 7. The full text of the petitioner's statement was offered by the Respondent and admitted as Exhibit A. The Court has reviewed all of the testimony and documentary evidence and reaches the following findings of fact.
 Findings of Fact
The petitioner was the defendant in a criminal case, Docket No. CR4 216422, tried in the Judicial District of Waterbury in May 1994. Although originally charged with Murder in violation of CGS § 53a-54a, after a plea of not guilty, the defendant was acquitted of the Murder charge, but found guilty of the lesser-included offense of Intentional Manslaughter in the 1st degree in violation of CGS § 53a-55 (a)(1). At the sentencing on July 8, 1994, the Court, Fasano, J, sentenced the petitioner to the custody of the Commissioner of Corrections for a period of twenty years. The petitioner appealed this conviction to the Connecticut Appellate Court that, in a decision dated April 10, 2001, upheld the conviction and sentence. See State vs. Vicente, 62 Conn. App. 625
(2001).
The primary issue at the petitioner's trial involved a statement that the petitioner had given to the Waterbury police on May 26, 1993 in which the petitioner made numerous inculpatory statements. The petitioner's trial defense counsel challenged the voluntariness of this statement. The issue came on for hearing before the trial court, Fasano, J, on May 11, 1994. Evidence was received from the petitioner and two Waterbury police officers, Detectives Robert Henderson and Neil O'Leary. In addition, the petitioner offered his version of what took place during the taking of the statement. The detectives and the petitioner offered two versions of the incident that differed quite significantly. The trial judge obviously believed the version of the events given by the two police officers since the motion to suppress the statement was denied on the record by Judge Fasano on May 12, 1994.
The thrust of the petitioner's defense at the trial was that he was not the person who shot the victim, David Algarin. In fact, he instructed his trial defense counsel that he was not the shooter and that is the approach that he wanted to take at trial. The statement attributed to the petitioner was an important piece of evidence upon which the state relied.
The best pretrial offer that was received from the prosecution involved CT Page 13809 the petitioner pleading guilty to murder and receiving a sentence of 35 years. This offer was communicated to the petitioner who rejected it and proceeded to trial.
The petitioner's appellate counsel conducted an exhaustive review of the record of trial seeking to find a valid ground upon which to file and pursue the appeal. Given the standard of appellate review of a factual finding by the trial judge, i.e. a trial judge's findings of fact will be upheld unless they are clearly erroneous, the appellate counsel determined that there was no basis upon which to appeal Judge Fasano's denial of the motion to suppress the petitioner's statement. Appellate counsel did devote an appropriate amount of time and effort to appeal the instructions of the trial judge.
 Discussion of Law
Any claim of ineffective assistance of counsel must satisfy both prongs of the test set forth by the United States Supreme Court in Stricklandvs. Washington, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d (1984) before the Court can grant relief. Specifically, the petitioner must first show "that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel' guaranteed the defendant by the Sixth Amendment." Strickland, infra
at 687. If, and only if, the petitioner manages to get over the first hurdle, then the petitioner must clear the second obstacle by proving "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, infra at 687. In short, the petitioner must show deficiency and prejudice. A failure to prove both, even though counsel's trial performance may have been substandard, will result in denial of the petition.
Trial in this Court of a habeas petition is not an opportunity for a new counsel to attempt to re-litigate a case in a different manner. A habeas court, knowing the outcome of the trial, "may not indulge in hindsight to reconstruct the circumstances surrounding the challenged conduct, but must evaluate the acts or omissions from trial counsel's perspective at the time of trial." Beasley vs. Commissioner of Corrections, 47 Conn. App. 253 at 264 (1979), cert. den. 243 Conn. 967
(1998). A habeas court does not engage in second guessing decisions by trial counsel. "A fair assessment of an attorney's performance requires CT Page 13810 that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances to counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Henry vs.Commissioner of Correction, 60 Conn. App. 313 at 317 (2000).
There was a good faith basis for trial defense counsel to have challenged the voluntariness of the petitioner's statement to the Waterbury police. In fact, the issue was raised and litigated in the trial court. A review of the transcript shows that the petitioner's trial defense counsel not only cross examined the two police officers who testified, but she also put the petitioner on the stand to present his version of what took place the night that he gave his statement. The petitioner was able to present his testimony about his fear of the Latin Kings, about the alleged threat by the police to arrest his grandmother if he did not cooperate, and about the alleged threat to drop him off in Latin King territory where he stood a good likelihood of getting shot. It is true that this version of the events of May 26, 1993 may have vitiated the voluntary aspect of the statement he gave to police, if it was the truth. Unfortunately for the petitioner, it is clear that Judge Fasano did not believe the petitioner's versions of the night's events and did accept the detectives' version. In essence, the petitioner now says that his trial defense counsel was ineffective because the trial judge did not believe him. There was no evidence introduced at the habeas trial to show that there were any matters available to the trial defense counsel that would have made a difference in the litigation of this motion.[2]
In the instant case, it is important to examine the instructions that the petitioner presented to his counsel. First and foremost, the petitioner denied that he was the person who shot the victim. This was the position that he steadfastly maintained with his trial defense counsel. In fact, he clearly repeated his denial of being the shooter before this Court. Given this adamant position of the petitioner that he was not the shooter, the issue of self-defense could not be raised. Therefore, all of the evidence pertaining to the petitioner's fear of reprisals from the Latin Kings has no bearing on the defense of the case.[3] It can hardly be called ineffective assistance of trial defense counsel when that counsel follows the instructions of her client and presents the defense that he adamantly and repeatedly says is true. Indeed, Rule 3.1 of the Rules of Professional Conduct states that: "[a] lawyer shall not bring or defend a proceeding or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of CT Page 13811 existing law." As an attorney and member of the Connecticut bar, the petitioner's trial counsel was bound by this rule and undoubtedly would have faced some form of formal discipline had she pursued a claim of self defense. Given her instructions from her client and the petitioner's confirmation at the habeas trial there clearly was no basis for doing so. Essentially, the petitioner is now asking this Court to second guess the trial defense counsel and find that it is deficient performance to fail to present a defense of self-defense even though such defense was clearly repudiated by her client. To adopt such a rule would put trial defense counsel in the untenable position of having to choose between being accused of deficient performance in a post conviction habeas proceeding if they fail to pursue all defenses even though there is no good faith basis to do so, and having to face disbarment for a violation of Rule 3.1 by putting forth a totally a baseless defense. The petitioner is entitled to representation by a counsel who will, within the constraints of the Rules of Professional Conduct, zealously represent the interests of the petitioner. He is not, however, entitled to demand that an attorney suborn perjury and risk disbarment and criminal prosecution by putting forth a defense not warranted by the facts.
It is clear that, far from being ineffective, the trial defense counsel did an admirable job in defending the petitioner. He was charged with a crime that, had he been convicted of it, would have mandated a minimum 25 year sentence and exposed him to a maximum of 60 years. The best pretrial offer from the state involved his pleading guilty to murder and receiving a 35-year sentence. After the trial, the petitioner was acquitted of murder and convicted of a lesser-included offense that allowed for a maximum sentence 20 years. He thereafter received a sentence that undercut the best prosecution offer by fifteen years. Rather than spend his entire life locked up behind bars, the petitioner will be released during his 37th year of life thereby allowing him some opportunity to pursue a normal existence. Judge Fasano best sums it up in the sentencing proceeding where he addressed the defendant/petitioner and told him, "obviously your attorney did a good job and the jury gave you some consideration either for your age or your testimony."
This brings us to the alleged deficiencies of the appellate counsel. Any claim of ineffective assistance of appellate counsel must establish" (1) that his appellate counsel's performance fell below the standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law, and (2) that this lack of competency contributed so significantly to the affirmance of his conviction as to have deprived him of a fair appeal, thus causing an unreliable conviction to stand." Sekou vs. Warden, 216 Conn. 678 at 690
(1990). "In order for the petitioner to establish prejudice resulting CT Page 13812 from his appellate counsel's deficient performance, he must establish that, as a result of that performance, there remains a probability sufficient to undermine the confidence in the verdict that resulted in his appeal." Bunckley vs. Commissioner of Correction, 222 Conn. 444
at 454 (1992). The standard for ineffective assistance of appellate counsel, essentially mirrors the Strickland standard for trial defense counsel.
The petitioner introduced testimony from the appellate counsel that he had considered raising the issue of the voluntariness of the petitioner's statement on appeal. Nevertheless, Attorney Doran decided against raising that particular issue and chose, instead, to concentrate his efforts on attacking the jury instructions. In deciding to forego the issue of the statement, Attorney Doran stated that he was aware that the decision by Judge Fasano denying the motion to suppress the statement was exclusively an interpretation of the facts of the evening of May 26, 1993. The appellate counsel clearly recognized that "[an appellate court's] standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . [W]here the legal conclusions of the court are challenged, [the appellate court] must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision. . . ." State v. Clark,255 Conn. 268, 279 (2001). Attorney Doran determined that there was no way to show that Judge Fasano's findings of fact were clearly erroneous
in order to prevail on appeal. Accordingly, he made the tactical decision to focus his attention on what he perceived to be the instructional error. The petitioner has failed to introduce any evidence at the habeas trial that would tend to show that Attorney Doran was wrong. Accordingly, this Court cannot find that there is any deficiency in the performance of the appellate counsel.
It is not necessary to even consider whether a trial or appellate counsel's performance was deficient if the Habeas Court is satisfied that there was no prejudice to the defendant by the actions of the trial counsel in representing the petitioner. "A reviewing court can find against a petitioner on either ground, whichever is easier. Stricklandv. Washington, supra, 697; see Nardini v. Manson, 207 Conn. 118, 124,540 A.2d 69 (1988) (`[a] court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice')" Valeriano vs. Bronson, 209 Conn. 75 at 86 (1988). Where there has been no proof of any prejudice, the Court has no choice but to deny the petition for a Writ of Habeas Corpus. CT Page 13813
The petitioner did not suffer any prejudice as a result of any of the challenged actions or omissions of the trial defense counsel or appellate counsel. Even assuming deficient performance, the petitioner must still show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, infra at 694.
Given the failure of the petitioner to show that any of the acts or omissions of either trial or appellate counsel were constitutionally deficient, let alone a showing of any prejudice flowing therefrom, this Court will deny the petition for habeas corpus.
Accordingly, the Petition for a Writ of Habeas Corpus is denied.
S. T. Fuger, Jr., Judge